**K.M.C., Petitioner/Respondent,**

**v.**

**M.W.M., Respondent/Appellant.**

**No. ED 104560**

Missouri Court of Appeals, Eastern District, DIVISION TWO.

Filed: May 2, 2017

Michael W. Moll, Union, MO, Appellant Acting Pro Se.

SHERRI B. SULLIVAN, P.J.

## Introduction

M.W.M. (Appellant) appeals from the trial court's May 25, 2016 Judgment of the Full Order of Protection entered pursuant to the Adult Abuse Act, Sections 455.010 to 455.085.[1] After both parties presented their sides at a full hearing, the court issued K.M.C. (Respondent) a full order of protection mandating that Appellant shall not communicate with Respondent in any manner or through any medium, including through the use of third parties. The order also provided Appellant shall not commit or threaten to commit domestic violence, molest, stalk, or disturb the peace of Respondent. The order further stipulated Appellant shall not harass, stalk, or threaten Respondent or engage in other conduct that would place Respondent in reasonable fear of bodily injury to Respondent. Finally, the order commanded Appellant shall not use, attempt to use, or threaten to use physical force against Respondent that would reasonably cause bodily injury. We affirm.

## Appeal

### Points I-III

■ Appellant presents four points on appeal. His first three points allege the Adult Abuse Act and the trial court's judgment entered pursuant to the Act are unconstitutional, in that they violate the ban on *ex post facto* laws by punishing his past actions in harassing and stalking Respondent; prohibit his first amendment right to free association and speech in that they ban him from communicating, harassing, or stalking Respondent; and violate his right to due process in prohibiting his first amendment right to associate with and speak to Respondent as he sees fit, as well as deprive him of his constitutionally pro-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

tected right to conceal and carry firearms by prohibiting him from threatening to or using physical force against Respondent.

Appellant filed his brief on November 16, 2016. In his jurisdictional statement, Appellant alleged the Missouri Supreme Court has jurisdiction because his appeal questions the constitutionality of a state statute. This Court entered an Order on November 28, 2016, noting that to preserve a constitutional question for appellate review, a litigant must, among other things, raise the question at the earliest opportunity consistent with good pleading and orderly procedure. Brethorst v. Brethorst, 50 S.W.3d 864, 868 (Mo.App. E.D. 2001). The Order further noted if Appellant's constitutional challenges had been preserved for review, this Court would not have jurisdiction and the appeal would be transferred to the Missouri Supreme Court but if Appellant failed to preserve the constitutional challenges for appellate review, this Court would have jurisdiction of any remaining issues and the waived constitutional issues would not be reviewed by this Court. State v. Bowens, 964 S.W.2d 232, 236 (Mo.App. E.D. 1998). The Order directed Appellant to brief the issue "addressing whether this appeal should be transferred to the Supreme Court" in a memorandum to be filed with the Court by December 14, 2016.

Appellant filed a motion and memorandum addressing these issues on December 6 and December 8, 2016. In the motion and memorandum, he requests transfer to the Supreme Court and states he did not raise these issues in a timely fashion at the trial court because of his inexperience. The motion was taken with the case.

 A *pro se* litigant is held to the same standards as a licensed attorney. Portwood–Hurt v. Hurt, 988 S.W.2d 613, 618 (Mo.App. W.D. 1999). Judicial impartiality, judicial economy, and fairness to all parties preclude courts from granting *pro se* litigants preferential treatment. Ward v. United Engineering Co., 249 S.W.3d 285, 287 (Mo.App. E.D. 2008). Because Appellant failed to raise his constitutional claims at the earliest opportunity, they are not preserved for transfer to the Supreme Court nor can we review them. Points I, II and III are therefore denied. Appellant's motion is likewise denied. We retain jurisdiction to proceed to review Appellant's remaining point on appeal, Point IV.

## Point IV

 In Point IV, Appellant alleges certain elements of the statute were not met by Respondent. Specifically, Appellant contends Respondent failed to present evidence fulfilling the "illegitimate purpose and course of conduct" and "reasonable person" elements of the statute because Appellant was only engaged in legitimate, lawful, and protected activity; and there is no objective evidence Respondent ever feared physical harm or suffered substantial emotional distress caused by Appellant.

## Standard of Review

 We review an order of protection the same as in any other court-tried case. M.N.M v. S.R.B., 499 S.W.3d 383, 384 (Mo. App. E.D. 2016). We will uphold the trial court's judgment as long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Id. All facts and inferences are viewed in the light most favorable to the trial court's ruling. Id. Reviewing the evidence in the light most favorable to the trial court's order, we defer to the trial court's superior ability to evaluate the potential for abuse by the testimony and demeanor of witnesses. A.S. v. Decker, 318 S.W.3d 751, 756 (Mo. App. W.D. 2010). Because the trial judge is

in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded. S.A. v. Miller, 248 S.W.3d 96, 97 (Mo.App. W.D. 2008). The trial judge is in the best position to gauge the credibility of the witnesses and to determine the existence of any reasonable apprehension of abuse that a petitioner may harbor; conversely, the judge can determine whether a given respondent appears capable of the feared abuse. Parkhurst v. Parkhurst, 793 S.W.2d 634, 636 (Mo.App. E.D. 1990).

## Discussion

An adult who has been the victim of stalking and harassment may request relief by filing a verified petition under the Adult Abuse Act. Section 455.020. Section 455.020, titled "Relief may be sought—order of protection effective, where," provides in pertinent part:

1. Any person who has been subject to domestic violence by a present or former family or household member, or who has been the victim of stalking or sexual assault, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such domestic violence, stalking, or sexual assault by the respondent.

On April 1, 2016, Respondent filed a verified petition for an order of protection for adult abuse/stalking against Appellant, a 59-year-old male who is approximately six feet tall and 250 pounds. Appellant was a patient at the dental office where Respondent was employed as a dental hygienist. Respondent alleged in her petition that Appellant had stalked her, harassed her, and followed her from place to place. Respondent set out three significant dates where Appellant had followed and stopped her at an Aldi's and a Wal–Mart. Respondent also alleged he had called her place of employment and her church four times in the span of two weeks. Respondent alleged she lives alone and was afraid of Appellant because he would not leave her alone and he could easily hurt her because of their difference in age and size.

Section 455.010, titled "Definitions," provides in pertinent part:

As used in this chapter, unless the context clearly indicates otherwise, the following terms shall mean:

(1) **"Abuse" includes but is not limited to the occurrence of any of the following acts, attempts or threats against a person who may be protected pursuant to this chapter,** except abuse shall not include abuse inflicted on a child by accidental means by an adult household member or discipline of a child, including spanking, in a reasonable manner:

(a) "Assault", purposely or knowingly placing or attempting to place another in fear of physical harm;

(b) "Battery", purposely or knowingly causing physical harm to another with or without a deadly weapon;

(c) "Coercion", compelling another by force or threat of force to engage in conduct from which the latter has a right to abstain or to abstain from conduct in which the person has a right to engage;

(d) **"Harassment", engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult or child to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner or child. Such conduct might include, but is not limited to:**

a. Following another about in a public place or places;

b. Peering in the window or lingering outside the residence of another; but does not include constitutionally protected activity. . . .

. . .

(14) "Stalking" is when any person purposely engages in an unwanted course of conduct that causes alarm to another person, or a person who resides together in the same household with the person seeking the order of protection when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:

(a) "Alarm" means to cause fear of danger of physical harm; and

(b) "Course of conduct" means a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact.

Section 455.010 RSMo Cum.Supp.2015 (emphasis added).

 Abuse by harassment requires a dual showing, that the conduct must be such as to cause a reasonable person to suffer substantial emotional distress, and also that it must actually cause such distress to the petitioner. C.B. v. Buchheit, 254 S.W.3d 210, 213 (Mo.App. E.D. 2008); Wallace v. Van Pelt, 969 S.W.2d 380, 384 (Mo.App. W.D. 1998). The phrase "substantial emotional distress" means "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." C.B., 254 S.W.3d at 213; Wallace, 969 S.W.2d at 386.

 In amending the Adult Abuse Act to include stalking, our legislature responded to increased public awareness and media attention devoted to the stalking of an individual. Wallace, 969 S.W.2d at 387. The laudatory purpose is to prevent potential violence, and unnecessary and unjustified infliction of emotional distress. Id. Stalking occurs "when any person purposely engages in an unwanted course of conduct that causes alarm to another person." Section 455.010(14). Section 455.010(10)(a) provides the course of conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact. See also, S.A., 248 S.W.3d at 100. "Alarm" requires proof that the petitioner was placed in "fear of danger of physical harm." Section 455.010(14)(a).

Respondent is a dental hygienist. Appellant was a patient at the practice where Respondent worked. Appellant repeatedly approached Respondent in locations outside the dental practice asking her if she was upset with him.

On December 10, 2015, Appellant approached Respondent from behind at Aldi's and asked her if she was upset with him. Respondent asked Appellant what he was talking about. Appellant told her he had made complaints about her at the dental office. Respondent told him she did not know what he was talking about. Appellant asked Respondent if she was mad at him. Respondent said she told him she was not upset with him and everything was fine.

A few months later, on March 3, 2016, Appellant followed Respondent into Wal-Mart. Appellant approached Respondent from behind and asked her why she was upset with him. Again, Respondent reassured Appellant she was not mad at him.

Respondent said she tried to keep the encounter brief and professional. However, Appellant proceeded to share some details about his personal life with Respondent.

On March 23, 2016, less than three weeks after the last encounter, Appellant followed Respondent into Aldi's and his behavior escalated from inquiring about her feelings toward him to expressing anger towards her. This third time, Appellant approached Respondent from behind and told her he was angry with her for not responding to his multiple Facebook requests to be her "friend" and thus have access to her personal Facebook page. Appellant also prevented Respondent from pushing her shopping cart to get away from him by physically putting his hand on it. Appellant told Respondent he was upset because she was mean to him at his appointment. Respondent had no idea what Appellant was talking about, and for the third time, reassured him she was not mad at him. Appellant persisted and asked Respondent, "Why do you keep pushing me away?"

At this point, Respondent decided because of what Appellant had previously said in the second encounter at Wal–Mart about his personal life, she did not think it was wise to provoke him by confronting him about his behavior, which was alarming her. Appellant told her he had come into the store because he saw her car in the parking lot so he knew she was in the store and wanted to talk to her. Respondent testified she had purchased a new car with new license plates on January 18, 2016, after Appellant's last dental appointment, January 12, 2016, so she believed he had been following her and watching her movements around town. After the encounter on March 23, 2016, Respondent went to the police station and reported Appellant's behavior.

We find Appellant's actions of repeatedly following and approaching Respondent with no legitimate purpose other than to interrogate her about whether she was angry at him and to tell her he was angry at her when they had no personal relationship, along with the escalation of his behavior over time, constitute harassment and stalking such that a reasonable person would be alarmed and distressed beyond the normal day-to-day irritations. This created more uneasiness, nervousness, unhappiness or the like than is commonly experienced in day-to-day living. C.B., 254 S.W.3d at 213; Wallace, 969 S.W.2d at 386.

This is not a case where a petitioner is abusing the Adult Abuse Act by using it as a "panacea for minor arguments that frequently occur between neighbors," but rather for the intended purpose of the act, to prevent potential violence and unnecessary, unjustified infliction of emotional distress. Wallace, 969 S.W.2d at 386. Respondent went to the police the same day Appellant told her he knew about her new car, followed her into the grocery store, told her he was angry with her, and restrained her from pushing her cart away, and *prior* to filing her petition for protection from Appellant. He was barred from the dental practice, not at her request. Respondent had no personal relationship with Appellant or any motive to cause harm to him.

Respondent acted out of fear for her safety. She twice asserted in her testimony she was afraid to say anything to Appellant in order not to provoke him. To the trial judge, she stated: "[D]ue to some things he shared about his personal life, I had reason to fear what kind of response a confrontational statement would have made." On cross-examination by Appellant as to whether she was "coerced" into conversation with him, she stated, "I tried to

be polite and brief. . . . I had reason to fear confrontation."

Under the evidence presented in this case, the trial court could reasonably conclude Appellant had engaged in a pattern of following Respondent and exposing her to unwanted contact with him. S.A., 248 S.W.3d at 100. The violent acts that this Act is designed to prevent occur frequently and, often, without warning or reason, and the Act places the trial court in the position of determining the credibility of the potential for violence based as much on the demeanor of the parties involved as on past incidents of abuse or threatened abuse. Parkhurst, 793 S.W.2d at 637.

■ It would be very tempting for an appellate court, on review, to reverse an order of protection where no violence had actually occurred, since by the time an appeal would reach the appellate court, the feared abuse would have already occurred or not occurred. Id. We do not believe, however, that this type of "hindsight" review is our function. Id. The trial court is in the best position to determine the necessity for an order at the time of the hearing. Id.

The court was not required to accept any of Appellant's testimony regarding his purpose or motives as credible. Id. at 100–01. Reviewing the evidence in the light most favorable to the trial court's order, we defer to the trial court's superior ability to evaluate the testimony and demeanor of witnesses. A.S., 318 S.W.3d at 756. With these principles in mind, we find the trial court's record contains sufficient evidence to find Appellant purposely engaged in an unwanted pattern and course of conduct that served no legitimate purpose and reasonably caused alarm to Respondent. Appellant's conduct rose to the level of provoking a reasonable person to suffer substantial emotional distress as contemplated by the statute. We find it is objectively reasonable for a woman to be alarmed under these circumstances and to believe she might be in danger of physical harm from Appellant. S.A., 248 S.W.3d at 100. Point IV is denied.

We note it is clear from the statements Appellant makes in his brief on appeal that he completely misconstrues the disturbing nature of his behavior. He pontificates on such things as "the prejudice against age gap marriages"; "marriage [being] honorable in all and the bed undefiled: but whoremonger and adulterers God will judge"; "the lie of the politically correct, intolerant, feminist ideology that calls good, evil and evil, good"; and states that "women have hijacked and co-opted the legal system to enable them to criminalize [men's] God given male characteristic to compete, conquer, rule, dominate, lead, father, and husband a wife." Appellant writes that because he has not threatened physical violence to Respondent, she is not entitled to an order of protection prohibiting him from talking to her, approaching her, and following her whenever he pleases because it infringes upon his first amendment rights. We find the order of protection in this case to be supported by substantial evidence and to serve the legitimate purpose of curtailing the escalation of Appellant's alarming behavior toward Respondent.

## Conclusion

The Judgment of the Full Order of Protection on the behalf of Respondent is affirmed.

Colleen Dolan, J., concurs.

Roy L. Richter, J., dissents in separate opinion.

ROY L. RICHTER, Judge, dissenting.

I respectfully dissent.

On the Petition for Order of Protection filed by Respondent, she checked the box "Stalking" and defined the relationship as "provider/patient." Section III of the Petition is titled "Location where domestic violence or stalking occurred;" Respondent wrote nothing in this section. Respondent went into more detail later in the Petition stating Appellant "harassed me and followed me from place to place."

Section VI of the Petition states: "I am afraid of [Appellant] and there is an immediate and present danger of domestic violence to me or other good cause for an emergency temporary order of protection because: (describe)." In this section, Petitioner wrote: "[Appellant] has been following my vehicle around town, although I got a new car/plates. When he stops me, he wants to know why I don't 'talk' to him or want to 'be his friend.' I live alone and he only approaches me in public when people aren't around, and I feel uncomfortable because he won't leave me alone and could easily harm due to our difference in age/size."

I agree that Appellant's Points I, II and III may not be addressed as those issues raised were not preserved. I also agree that Appellant's brief contains disturbing language. However, the Petitioner must not only plead, but prove her case before a full order of protection (which carries with it negative consequences for anyone named as a respondent) may be issued. Schwalm v. Schwalm, 217 S.W.3d 335, 337 (Mo. App. E.D. 2007). In this case, there is a failure of proof by Petitioner, and without sufficient evidence, a full order of protection cannot be entered. Perhaps it is the fault of the form provided by the court, which does not disclose the statutory requirements to constitute stalking or harassment. See Section 455.010.

A Petitioner must prove the allegation of stalking by preponderance of the evidence in order to obtain a full order of protection. McGrath v. Bowen, 192 S.W.3d 515, 517 (Mo. App. E.D. 2006); See Section 455.040.1. In proving the allegation of stalking, a plaintiff is required to do more than affirmatively assert that the conduct caused alarm. Schwalm, 217 S.W.3d at 337. The plaintiff, instead, must offer evidence that actually shows a defendant's conduct caused a fear of danger of physical harm. Id. This Court has emphasized the importance of providing testimony specifically addressing a plaintiff's fear of physical harm. Id. An appellate court will reverse orders of protection based on stalking where there is no evidence of overt threats of physical harm and no evidence of physical confrontations. Lawyer v. Fino, 459 S.W.3d 528, 533 (Mo. App. S.D. 2015).

Respondent stated that "due to some things that [Appellant] shared about his personal life, I had reason to fear what kind of response a confrontational statement would have made." Respondent did not elaborate on the basis for this fear, and made no mention of what type of response she feared. During cross-examination, Respondent merely stated that she "had reason to fear confrontation." Appellant did not ask Respondent to elaborate on those reasons, and Respondent said nothing further during the hearing. Respondent's Petition for Order of Protection stated she feels "uncomfortable because [Appellant] won't leave me alone and could easily [cause] harm due to our difference in age [and] size." However, Respondent did not provide any evidence of physical altercations or threatening behavior exhibited by Appellant. While the testimony noted Respondent was *uncomfortable*, this does not satisfy the statutory definition of "*alarm*," which requires "*fear of danger of physical harm.*" Section 455.010(14)(a) (emphasis added). Further, Respondent's conclusory statements expressing fear were unsup-

ported by additional testimony and failed to specifically mention any reason to fear physical harm. These are statutory requirements—there must be evidence presented to the Court to show a fear of danger of physical harm—to constitute stalking. That evidence is not present in this case.

Respondent further alleged harassment. Before a court can find harassment, there must be evidence to satisfy the requirements of Section 455.010(1)(d), which defines "harassment" as:

> Engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult or child to suffer substantial emotional distress and *must actually cause substantial emotional distress to the petitioner* .... (emphasis added).

Neither the Petition nor the presented testimony ever stated that Petitioner suffered substantial emotional distress.

I would remand this matter to the trial court for hearing to determine whether or not Petitioner feared she was in danger of physical harm or suffered substantial emotional distress. If the answer to those questions is "no," an order of protection cannot be entered.