

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| A.O., | ) | No. ED107707 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Mary B. Schroeder |
| V.O., | ) | |
| | ) | |
| Appellant. | ) | Filed: February 11, 2020 |

### Introduction

V.O. ("Father") appeals the trial court's judgment of full order of protection entered against him under the Adult Abuse Act, section 455.010 et seq.,[1] claiming the trial court's finding he engaged in stalking against A.O. ("Mother") was not supported by substantial evidence. The trial court's judgment found Mother "prove[d] allegations of domestic violence, stalking, *and/or* sexual assault against [Father] and [Father] c[ould not] show that his . . . actions alleged to constitute abuse were otherwise justified under the law." (emphasis added). Proof of any one of these bases would be sufficient to uphold the trial court's judgment. Because there was substantial evidence Father harassed Mother and, therefore, committed an act of domestic violence, Father's claim is without merit. The trial court's judgment is affirmed.

---

[1] All statutory references are to RSMo (2015), unless otherwise indicated.

**Factual and Procedural Background[2]**

Viewed in the light most favorable to the judgment,[3] the evidence is as follows. Father and Mother are former spouses with two children ("Children") together and separated after ten years of marriage. Mother filed for divorce on July 5, 2016. The trial court entered a Judgment of Dissolution of Marriage ("Judgment") on August 8, 2016, awarding Father and Mother joint legal and physical custody of Children. Then, Father and Mother stipulated the Judgment should be modified because Mother's work schedule made it difficult for exchanges of Children to occur regularly. The trial court entered the first modification of the Judgment ("First Modified Judgment") on February 21, 2017. The First Modified Judgment provided Father would maintain legal custody of Children but would only have physical custody of Children every Wednesday from 3:00 p.m. to 7:30 p.m., when Mother is working a 24-hour shift beginning at 7:30 a.m., and every other weekend.

A few months after the trial court's entry of the First Modified Judgment, Mother sought a second modification of the Judgment, alleging "[Father]'s behavior ha[d] become more erratic and volatile." She alleged Father threatened to keep Children from her and physically restrained Children from going to her home. She alleged Father grabbed one of the Children by the arm, causing arm bruising and soreness. She alleged, after this incident, Children's Division investigated Father. She also alleged "[Father] seem[ed] incapable of controlling his temper and/or his anger toward [her] and [wa]s taking his emotions out physically on . . . [C]hildren." She also sought a temporary restraining order against Father, which the trial court granted.

---

[2] We have supplemented the facts by taking judicial notice of the underlying cases *A.O. v. V.O.*, 19SL-PN00247 and *A.O. v. V.O.*, 16SL-DR03752.

[3] *D.A.T. v. M.A.T.*, 413 S.W.3d 665, 668 (Mo. App. E.D. 2013).

The trial court entered the second modification of the Judgment ("Second Modified Judgment") on April 4, 2018. The Second Modified Judgment awarded Mother sole legal and physical custody of Children and awarded Father unsupervised visitation. The Second Modified Judgment provided Father could talk to Children by phone or FaceTime twice per week and attend Children's activities. The Second Modified Judgment provided Father must remain at least 100 feet from Mother and consult with Dr. Rick Scott, a therapist, at least twice per month.

One month after the trial court's entry of the Second Modified Judgment, Mother sought a third modification of the Judgment, alleging Father engaged in "blatant" and "repeated violations" of the Second Modified Judgment, including initiating inappropriate communication with Mother and Children, coming within 100 feet of Mother at Children's activities, and failing to consult with Dr. Scott at least twice per month. The trial court entered the third modification of the Judgment on July 2, 2018 ("Third Modified Judgment"). The Third Modified Judgment provided Father's visitation with Children must be supervised. The Third Modified Judgment provided "unsupervised contact by Father with the children is not in the children's best interest . . . because of the findings by Dr. Scott with regard to Father."[4]

The Third Modified Judgment provided Father's supervised visitation with Children would occur on Sundays at a location arranged by a supervisor. The Third Modified Judgment provided, "[Father] shall not attempt to contact the children in any manner" except during his supervised visits on Sundays. The Third Modified Judgment prohibited Father from requesting or receiving any information from Children's school. In addition, the Third Modified Judgment provided:

1) FATHER SHALL NOT ATTEND ANY OF [CHILDREN'S] ACTIVITIES NOR SHALL HE GO THE CHILDREN'S SCHOOL.

---

[4] It is unclear from the record what "Dr. Scott's findings with regard to Father" were.

2)  IF FATHER MISSES A VISIT WITH [CHILDREN] BECAUSE OF HIS INABILITY TO ATTEND THE VISIT, SUCH VISIT SHALL NOT BE MADE UP.

. . .

4)  FATHER SHALL NOT LIVE WITHIN 1 MILE OF MOTHER.

On January 15, 2019, Mother filed her petition ("Petition") in the St. Louis County Circuit Court, seeking a full order of protection against Father. Mother's Petition alleged Father followed her in his car to several prohibited locations on these occasions:

- **Wednesday, August 22, 2018:** Father followed Mother in his car as she dropped Children off at school in the morning.

- **Wednesday, September 5, 2018:** Father drove by Children's school in his car twice when she picked up Children from school in the afternoon.

- **Tuesday, November 27, 2018:** Father drove into Mother's subdivision, stopped at the stop sign, "waited for an unusual amount of time," and remained at the stop sign as she pulled her car into her driveway.

- **Wednesday, November 28, 2018:** After Mother dropped Children off at school in the morning, Father turned onto the road outside the school in his car and "dramatically wave[d]" to Mother.

- **Thursday, November 29, 2018:** Father drove his car in Mother's subdivision in the morning as Mother got in her car to drive Children to school.

- **Friday, December 7, 2018:** Mother took Children to flag football practice from 5:00-6:00 p.m. When Mother arrived with Children, Father's car was parked in a lot near the entrance. He sat in his car.

- **Friday, January 4, 2019:** Mother took Children to flag football practice from 5:00-6:00 p.m. When Mother arrived with Children, Father's car was parked in a lot near the entrance.

- **Saturday, January 5, 2019:** At approximately "4:20 p.m.," Father drove by Mother's home and honked his horn at her and Children.

- **Monday, January 14, 2019:** Father followed Mother in his car as she dropped Children off at school in the morning. Father appeared in his car at Children's school as Mother was

4

picking Children up from an after-school activity in the afternoon, rolled his window down, and waved to her and Children.

Mother's Petition alleged she feared Father and felt there was an immediate and present danger of domestic violence to her because "his behavior [wa]s becoming more erratic and escalating." Mother attached the Third Modified Judgment to her Petition.

The trial court held a hearing on Mother's Petition on February 11, 2019. Mother testified she was asking the trial court for an order of protection because Father was "following [her] and harassing [her]." She testified Father was "following [her] places where he's not supposed to be, to . . . [C]hildren's school; to . . . "[C]hildren's activities, and also [their] home in the subdivision." She testified regarding the incidents of Father following her alleged in her Petition. She testified none of the incidents occurred on a Sunday or were allowed under the Third Modified Judgment. She testified Father knew Children attended flag football practice on Friday nights from 5:00-6:00 p.m. She testified she video recorded Father following her in his car while she dropped Children off at school. She testified Father "continually violates" the Third Modified Judgment and has repeated this conduct "throughout the modification."

Father testified he works out at a gym near Children's flag football practice. He testified he did not know Children attended flag football on Friday evenings from 5:00-6:00 p.m. He testified he did not drive by Mother's home and honk his horn at her and Children. He testified he did not drive to Children's school. Father testified Mother recorded him at the gas station near Children's school around the time Children's school day ended.

The trial court told Father:

I've had this case and I've had it for a long time, sir, and you appear to think that rules don't apply to you. And here's what's going to happen, because now we've moved this to the big time. Now we've moved this and you're going to have violations, they're going to come back here, and I am going to put you in jail.

5

The trial court entered its judgment, finding Mother "prove[d] allegations of domestic violence, stalking, and/or sexual assault against [Father] and [Father] c[ould not] show that his . . . actions alleged to constitute abuse were otherwise justified under the law."  The trial court's judgment granted Mother a full order of protection against Father until February 10, 2021.

Father appeals.

## Standard of Review

Our review of the entry of a full order of protection under the Adult Abuse Act is "the same as any bench-tried case" and is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).  *P.D.J. v. S.S.*, 535 S.W.3d 821, 823 (Mo. App. E.D. 2017) (citing *C.D.R. v. Wideman*, 520 S.W.3d 839, 843 (Mo. App. W.D. 2017)).  Therefore, we will uphold the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law."  *Id.*  We "defer to the trial court's determination of credibility."  *Binggeli v. Hammond*, 300 S.W.3d 621, 623 (Mo. App. W.D. 2010) (citing *Schwalm v. Schwalm*, 217 S.W.3d 335, 336 (Mo. App. E.D. 2007)).  "The trial judge is in the best position to gauge the credibility of the witnesses and to determine the existence of any reasonable apprehension of abuse that a petitioner may harbor; conversely, the trial judge can determine whether a given respondent appears capable of the feared abuse."  *C.B. v. J.B.*, 356 S.W.3d 790, 792-93 (Mo. App. E.D. 2011) (alterations omitted) (quoting *Parkhurst v. Parkhurst*, 793 S.W.2d 634, 636 (Mo. App. 1990)).

Trial courts "are free to believe any, all, or none of the evidence presented at trial."  *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014) (citing *In re J.A.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014)).  Absent specific findings of fact providing otherwise, we will accept as true the evidence and inferences favorable to the trial court's judgment and disregard all contrary evidence and

inferences. *Id.*; Rule 73.01(c) ("All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.").[5]

## Discussion

In his sole point relied on, Father claims the trial court erred in entering a full order of protection against him because there was no substantial evidence to support a finding of stalking. He argues, because Mother never testified his conduct placed her in fear of physical harm, an essential element of the definition of stalking was not proven by a preponderance of the evidence and the trial court's judgment is unsupported by substantial evidence.

Under the Adult Abuse Act, a court may issue a full order of protection upon showing "domestic violence, stalking, *or* sexual assault." § 455.040 (emphasis added). "Stalking" is defined as "purposely engag[ing] in an unwanted course of conduct that causes alarm to another person, . . . when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(14). As defined by the Adult Abuse Act, "course of conduct" is "a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." § 455.010(14)(b). This "conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact." *Id.* "An activity with a legitimate purpose is one that is lawful or is allowed." *M.D.L. v. S.C.E.*, 391 S.W.3d 525, 529 (Mo. App. E.D. 2013) (citing *C.B. v. Buchheit*, 254 S.W.3d 207, 209 (Mo. App. E.D. 2008)). In the context of stalking, conduct only causes "alarm" if it causes a "fear of danger of physical harm." § 455.010(14)(a). "Proof of alarm involves both a subjective and objective component, such that [the] conduct must have caused [the petitioner] to subjectively fear physical harm and a reasonable

---

[5] All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise indicated. No party requested findings of fact on any controverted material fact issues, as provided under Rule 73.01(c). The trial court made no factual findings in its judgment contrary to the result reached in the judgment.

person under the same circumstances also would have feared physical harm." *M.D.L.*, 391 S.W.3d at 529.

Mother does not contest there is insufficient evidence to support a finding that Father's conduct caused Mother to fear physical harm as required by § 455.010(14)(a). Mother testified Father was "following [her] places where he's not supposed to be, to . . . [C]hildren's school;   to . . . "[C]hildren's activities, and also [their] home in the subdivision." She testified Father "continually violates" the Third Modified Judgment and has repeated this conduct "throughout the modification." However, Mother did not testify she feared physical harm because of Father's actions. Because Mother bore the burden of proving each element of stalking, she had to prove Father's conduct subjectively caused her to fear physical harm. *Id.* We acknowledge Mother's testimony identified several instances of Father's inappropriate conduct, given the restrictions placed on him in the Third Modified Judgment. But we find dispositive the absence of testimony from Mother that Father's conduct caused her to fear physical harm. Even when viewing the record in the light most favorable to the judgment, we do not find sufficient evidence from which the trial court could find Mother feared a danger of physical harm because of Father's conduct.

However, Father's argument the trial court's judgment lacks substantial evidence fails to consider Mother's allegations of harassment as the basis for the full order of protection. Under the trial court's judgment, Mother only needed to prove Father engaged in "domestic violence, stalking, *and/or* sexual assault." (emphasis added). Because there was substantial evidence Father harassed Mother and, therefore, committed an act of domestic violence, Father's claim is without merit.

"Domestic violence" is defined as "abuse" committed by a former spouse. § 455.010(5). "Abuse" includes, but is not limited to, the occurrence of any of the following acts, attempts, or

8

threats against a person: assault, battery, coercion, harassment, sexual assault, or unlawful imprisonment. § 455.010(1)(a)-(f). "Harassment" is defined as "engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult . . . and serves no legitimate purpose." § 455.010(1)(d). "The course of conduct must be such as would cause a reasonable adult . . . to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner." *Id.* Such conduct includes "[f]ollowing another about in a public place or places." *Id.* "Substantial emotional distress" has been interpreted by our Court to mean "something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." *K.M.C. v. M.W.M.*, 518 S.W.3d 273, 278 (Mo. App. E.D. 2017) (internal quotations and citations omitted). Unlike stalking, harassment does not require proof the conduct placed the petitioner in fear of danger of physical harm. *Compare* § 455.010(1)(d), *with* § 455.010(14)(a).

We find Father's actions of repeatedly following Mother and Children in his car and waving and honking his horn at them, with no legitimate purpose other than to insert himself in their lives in violation of the Third Modified Judgment, constituted harassment. Mother testified Father followed her and Children to Children's school, Children's activities, and their home on at least nine occasions. Mother testified Father knew Children attended flag football practice on Friday nights from 5:00-6:00 p.m. She testified Father "continually violates" the Third Modified Judgment and has repeated this conduct "throughout the modification." Father concedes his actions served no legitimate purpose, as they were prohibited by the Third Modified Judgment.

We further find Mother was reasonably distressed beyond the normal day-to-day irritations by Father's conduct. Mother's Petition alleged she feared Father because "his behavior [wa]s becoming more erratic and escalating." She testified she was asking the trial court for an order of

9

protection because Father was "following [her] and harassing [her]." She testified regarding the incidents of Father following her and Children to Children's school, activities, and their home and testified Father "continually violates" the Third Modified Judgment. Father's conduct was distressing enough she recorded Father following her in his car on video. Given the history between Mother and Father and the restrictions placed on Father through the Third Amended Judgment, Father's conduct would cause a reasonable person in Mother's position substantial emotional distress.

Although Father denied he went to Children's school or home and explained he did not know Children attended flag football practice on Friday evenings from 5:00-6:00 p.m., "we are bound by our standard of review, which requires us to defer to the trial court's credibility determinations and to view all facts and any inferences therefrom favorably to the judgment." *M.D.L.*, 391 S.W.3d at 531 (internal citations omitted). Because "[t]he violent acts that the [Adult Abuse] Act is designed to prevent occur frequently and, often, without warning or reason," it is the trial court's duty to "determin[e] the credibility of the potential for violence based as much on the demeanor of the parties involved as on past incidents of abuse or threatened abuse." *K.M.C.*, 518 S.W.3d at 280 (citing *Parkhurst*, 793 S.W.2d at 636). Mother and Father have an extensive and tumultuous history. Since their divorce, Mother has obtained multiple modifications to the Judgment and a temporary restraining order because of Father's behavior. The trial court also has extensive experience with Mother and Father, their divorce, and the several modifications made to the Judgment because of Father's behavior. The trial court was in the best position to determine any reasonable distress Mother may suffer and "the necessity for the full order of protection *at the time of the hearing*." *Parkhurst*, 793 S.W.2d at 637 (alterations in original).

Here, the trial court found Mother's testimony was more credible than Father's, and "we will not disturb that finding on appeal, particularly in cases under the Adult Abuse Act." *M.D.L.*, 391 S.W.3d at 531. Viewing the record in the light most favorable to the judgment, we find there was sufficient evidence from which the trial court could reasonably determine Father's conduct constituted harassment under section 455.010(1)(d). Accordingly, the trial court did not err in granting Mother a full order of protection against Father.

Father's point is denied.

### Conclusion

The trial court's judgment of full order of protection is affirmed on the basis of abuse.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.

11